For plaintiff: Sallet & Ress.

For defendant: Dooley, Jackvony, Curran & Dunn.

Mary A. Smith
vs.                    Div. No. 25037.
William L. Smith

May 23, 1933.

CHURCHILL, J. Petition for divorce and cross-petition heard on the merits.

Mary A. Smith filed a petition for divorce from bed and board on the grounds of extreme cruelty and gross misbehavior. The respondent filed a cross-petition on the ground that the petitioner, Mary A. Smith, at the time of her marriage to the respondent was married to one George J. Rotzman.

*Cross-Petition.*

On August 29, 1898, George J. Rotzman married Augusta Layer at Newport, Rhode Island.

July 23, 1904, an interlocutory judgment of divorce in favor of Augusta Rotzman was entered in a divorce action in the Supreme Court of the State of New York in the County of Queens. No final decree has ever been entered in this action and under the law of the State of New York, the marriage status remains unchanged until entry of final decree.

*Wilson* vs. *Burnett*, 172 N. Y., Supp. 673.

On November 26, 1904, at Jersey City, New Jersey, the petitioner, under the name of Marie Anna Ruth, went through a ceremony of marriage with George Rotzman under the name of George C. Rotzman, as recited in the marriage certificate. They lived together thereafter as man and wife until 1913, when the petitioner learned that no final decree had been entered in the divorce proceedings in the Supreme Court of the State of New York. She immediately left Rotzman and came to Rhode Island, where she has since lived.

On December 21, 1915, the petitioner, under the name of Mary A. Ruth, and the respondent were married at Attleboro, Massachusetts, and lived together in Providence until August, 1930, when the petitioner left the respondent, as she states, because of cruel treatment.

November 26, 1920, Rotzman, under the name of George C. Ratzman, instituted an action for divorce from the petitioner, naming her in the summons as Mary Ratzman. This action was begun in the Supreme Court of the State of New York for the County of Queens. Service was made on the petitioner in New York State but no appearance was entered by her or on her behalf, nor was any contest waged by her. This action went to final decree in favor of George J. Ratzman on April 15, 1921.

An examination of the evidence shows conclusively that the plaintiff in this action was the same person who went through a marriage ceremony with the petitioner at Jersey City on November 26, 1904, and who married Augusta Layer at Newport on August 29, 1898, and the Mary Ratzman named as the defendant in the New York proceedings instituted in November 1920 is the petitioner in this proceeding.

By stipulation of the parties, the statutes and the judicial opinions declaratory of the laws of the States of New Jersey, Massachusetts and New York, cited by the parties, may be used by this Court with the same force and effect as though formal proof thereof had been made at the hearing.

The main point relied on by the respondent is, that by the contract of marriage at Jersey City in 1904, Rotzman and the petitioner became husband and wife de facto at least. In other words, the respondent contends that a marriage status was established which, while voidable by appropriate proceedings, yet had a validity sufficient to prevent the petitioner from entering into a valid marriage with the respondent.

Under the laws of New Jersey, where Rotzman and the petitioner went through a marriage ceremony, a second marriage is invalid and the status of marriage is not created by such a ceremony if either of the parties and a spouse alive and undivorced at the time.

*Friesner* vs. *Symonds*, 46 N. J. Eq. 521.

"In no civilized country can a man have two lawful wives at the same time."

The rule in this state is the same, our Court having declared that a second marriage under such circumstances is a nullity.

*Lynch* vs. *Lynch*, 34 R. I. 261.

The respondent seeks to avoid the effect of the principle laid down in the Lynch case by what he claims to be the rule laid down in the case of *Leckney* vs. *Leckney*, 26 R. I. 441. That case came up on motion for temporary allowance, counsel fees and expenses under a petition in which a divorce was sought on the ground that at the time the marriage was entered into, the respondent had a wife who was still living and undivorced. The actual point decided was that under such a petition the petitioner had sufficient standing to be entitled to an allowance and counsel fees, and in so deciding the Court stated that "the parties became husband and wife de facto at least * * *."

The Court was careful, however, to point out the distinction in substance between a divorce proceeding in a technical sense of the term predicated upon an existing marriage and an annulment proceeding based on the ground that the pretended marriage never, in fact, existed, and went on to state that an annulment proceeding, though denominated by our divorce proceedings as a divorce, cannot be treated as a divorce for the purpose of awarding alimony proper or as entitling the wife to dower as those rights depend upon the existence of a valid marriage.

The case may not be treated as authority for the proposition for which the respondent contends. No decision of statute has been cited by the parties with respect to the law of Massachusetts which would invalidate the marriage of the parties at Attleboro, Massachusetts, on December 21, 1915.

See *Glass* vs. *Glass*, 114 Mass. 563.

The respondent next takes the position that by the judgment of the Supreme Court of the State of New York in the County of Queens, where a final decree of divorce was entered on April 5, 1921, the validity of the New Jersey marriage between the petitioner and Rotzman was established beyond successful attack.

The rule is otherwise: A judgment or decree in a divorce proceeding cannot be invoked by a third person in a subsequent action against one of the spouses as establishing facts which may have been or were adjudicated in the divorce proceedings.

*Williams* vs. *Williams*, 63 Wis. 58.
9 R. C. L., Sec. 273, and note and cases cited in 45 A. L. R. 925.

The respondent also argues that the action for divorce in New York instituted by Rotzman against the petitioner and the decree entered therein were the result of collusion on the part of the petitioner and hence the petitioner is barred.

Without reviewing the evidence on this point, it is sufficient to state that the Court, on all the evidence, does not find that the petitioner was guilty of fraud or collusion in causing the New York Court to enter a decree in the action brought by Rotzman. In any event this State has an interest in the present legal status of the petitioner and the respondent.

*Lynch* vs. *Lynch*, 34 R. I. 261.

There is no estoppel, therefore, which bars this Court from considering the validity of the New York divorce proceedings and the effect of its final decree.

The Court rules that the marriage between the petitioner and George C. Rotzman celebrated in Jersey City on November 26, 1904, was void ab initio and therefore the petitioner and respondent on December 21, 1915, were lawfully married and that a legal status of marriage was created thereby.

In order that the findings of fact may be complete, the Court further finds that after April 5, 1921, the date of the New York decree of divorce between Rotzman and the petitioner, the parties to this case, petitioner and respondent, lived together in Providence, Rhode Island, as man and wife until August 30, 1930, when petitioner left her husband because of cruel treatment at his hands; that during this period a child was born of the union; that they were known to the community as husband and wife and held each other out to the world as such.

This state of facts brings the case within the doctrine of *Holgate* vs. *United Electric Railways Co.*, 47 R. I. 337, as establishing a common law marriage.

The cross-petition is denied and dismissed.

### Original Petition.

The parties lived together on amicable terms until 1929, when dissensions arose because of the attentions of the respondent to another woman. That the wife was justifiably disturbed over this relationship is clearly shown by the evidence in the case. The husband used vile language toward his wife in the presence of their child and, finally, in July or August 1930, the respondent committed several acts of violence toward his wife. On the last occasion he struck her, pursued her from the room, overtook her in the hall and knocked her down, breaking a rib and inflicting other injuries so serious in character that she was obliged to have medical treatment for a comparatively long time at the Rhode Island Hospital. It is true that on the last occa-

sion the petitioner, after some argument, struck her husband across the mouth with a cloth, when he applied to her an obscene epithet, but this is obviously no excuse for an attack on her so violent as to put her life in danger. All these facts in relation to cruelty are amply corroborated, and indeed the respondent does not deny striking his wife, and particularly does not deny the assault upon her which resulted in the fracture of a rib. It is manifest from the testimony that if the petitioner lived with the respondent she would be in danger of further assaults.

The Court finds that the charge of extreme cruelty is made out by a preponderance of the testimony and that no sufficient provocation was given by the petitioner for such behavior on the part of the respondent.

Decision for the petitioner for divorce from bed and board and future cohabitation on the ground of extreme cruelty. The custody of William R. Smith, the minor child of the parties, is awarded the petitioner, and the petitioner is also awarded the sum of $15 a week for separate maintenance out of the estate of the respondent.

Attorneys for the petitioner: Messrs. William S. and Edmund W. Flynn.

Attorney for the respondent: John M. Clifford, Esquire.